753 A.2d 13

**Eugene Sherman COLVIN–EL**

v.

**STATE of Maryland.**

**Misc. No. 42, Sept. Term, 1999.**

Court of Appeals of Maryland.

June 7, 2000.

John H. Morris, Jr. and Jose Felipe Anderson, Baltimore, for appellant.

Annabelle L. Lisic, Asst. Atty. Gen., Baltimore (J. Joseph Curran, Jr., Atty. Gen. of Maryland), for appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

## O R D E R

The Court having considered the application for leave to appeal and motion for stay of execution and the response filed thereto in the above-captioned case, it is this 7th day of June, 2000

ORDERED, by the Court of Appeals of Maryland, that the application and motion be, and they are hereby, DENIED.

Dissenting Opinion by ELDRIDGE, J., in which BELL, C.J., joins.

ELDRIDGE, Judge, dissenting:

I respectfully dissent from the majority's denial of Colvin–El's "Application For Leave To Appeal" and denial of his "Motion For Stay of Execution."

Colvin–El, who is scheduled to be executed during the period of June 12–17, 2000, filed in the Circuit Court for Anne Arundel County a "Motion for Appropriate Relief to Obtain Proportionality Review" which the Circuit Court denied on May 4, 2000. Colvin–El filed in this Court on June 1, 2000, an application for leave to appeal from that denial, asking that his motion filed in the Circuit Court be treated as a petition for post conviction relief under the Maryland Post Conviction Procedure Act, Code (1957, 1996 Repl.Vol., 1999 Supp.), Art. 27, § 645A. I would treat the proceeding as one under the Post Conviction Procedure Act, and would grant the application for leave to appeal and the motion for a stay. In addition, I would vacate the Circuit Court's order and remand the case to the Circuit Court with directions to vacate the death sentence and impose a sentence of life imprisonment.

Under Maryland law, for a person convicted of first degree murder to be eligible for a death sentence, that person must have been "a principal in the first degree." Code (1957, 1996 Repl.Vol., 1999 Supp.), Art. 27, § 413(e)(1). In other words, the death penalty may not be imposed unless the defendant was the actual perpetrator of the murder. The only exception to this requirement is a defendant who "employed another

person to commit the murder and the murder was committed pursuant to an agreement or contract for remuneration or the promise of remuneration." Art. 27, § 413(d)(7).

When this case was last before the Court, Judge Bell (now Chief Judge Bell) and I dissented from the affirmation of the death penalty on the ground that "the evidence was wholly insufficient to establish [Colvin–El's] principalship in the first degree," *Colvin–el v. State*, 332 Md. 144, 186, 630 A.2d 725, 746 (1993) (Bell, J., joined by Eldridge, J., dissenting), *cert. denied*, 512 U.S. 1227, 114 S.Ct. 2725, 129 L.Ed.2d 849 (1994). For the reasons set forth in Judge Bell's dissenting opinion, 332 Md. at 185–200, 630 A.2d at 746–753, I continue to believe that the evidence was not sufficient to establish, beyond a reasonable doubt, that Colvin–El was the principal in the first degree. As discussed at length in Judge Bell's opinion, 332 Md. at 189–200, 630 A.2d at 748–753, the evidence at Colvin–El's 1992 re-sentencing proceeding disclosed that the basement door, which according to the State was Colvin–El's point of entry to the house in which the murder occurred, and where his fingerprints were found on the outside, could only be opened four inches because it was blocked from the inside by a metal storage cabinet. Furthermore, the investigating detective testified that he found no evidence that the cabinet had been moved. Also, the area of the basement in front of the door showed no signs of entry and was not disturbed. There was utterly no evidence showing that Colvin–El was ever inside the house. None of the numerous fingerprints inside of the house could be identified as belonging to Colvin–El, and one of those fingerprints, found on an item in the victim's handbag, definitely belonged to someone other than Colvin–El. When this case was before us most recently, Judge Bell summarized the evidence relating to first degree principalship as follows (332 Md. at 197–198, 630 A.2d at 751–752):

"[U]nless, given the State's theory, [Colvin–El] can be placed in the house through the approximately four inch opening in the basement door, there simply is no evidence that he committed the murder. The State's only theory was that the petitioner, acting alone, entered the house through

the basement door, and committed the murder when he was surprised by the victim. That theory works only if the petitioner is placed inside the house, in the manner alleged by the State. As I have demonstrated, the testimony of Detective Sturgeon, which the State offered in support of its theory, was wholly insufficient in that regard. Accordingly, it is appropriate to repeat that, in the context of proving first degree principalship, it is not enough to surmise as the Court did in *Colvin-el II*, that someone entered the house and killed the victim. The critical inquiry is who that someone was. Surmise simply is not acceptable as proof.

"The inferences to be drawn from the circumstantial evidence connecting the petitioner to the crimes may suffice to sustain the petitioner's guilt of first degree murder. Given the fingerprint evidence, they clearly do not suffice to sustain the petitioner's first degree principalship. Indeed, on that issue, the best that can be said is that the case is exceedingly weak. Moreover, the evidence as to the point of entry, indicating as it does that the point the State identifies could only be a point of attempted entry, further exposes the weakness of the State's circumstantial case against the petitioner as the actual perpetrator of the murder. It becomes weaker still when the evidence of other suspects, combined with the neighbors' testimony concerning the presence in the area at the time the crimes occurred, of other persons who could possibly have committed the offenses, are considered."

A jury verdict against a criminal defendant, based on insufficient evidence, is a denial of due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States and Article 24 of the Maryland Declaration of Rights. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Colvin–el v. State, supra*, 332 Md. at 188–189, 630 A.2d at 747–748; *Wiggins v. State*, 324 Md. 551, 566–567, 597 A.2d 1359, 1366 (1991), *cert. denied*, 503 U.S. 1007, 112 S.Ct. 1765, 118 L.Ed.2d 427 (1992). This Court should not

permit the State of Maryland to carry out an execution in violation of due process of law.[1]

Although the majority of the Court is unwilling to reconsider its earlier decision concerning the sufficiency of the evidence to establish that Colvin–El was the principal in the first degree, there is another substantial issue in this case which, at the very least, warrants full briefing and argument before this Court. Colvin–El's petition in the Circuit Court and his application for leave to appeal raise the matter of proportionality review. At the time of the offense in this case, the Maryland death penalty statute required that this Court de-

---

1. The State, in its opposition to Colvin–El's application for leave to appeal, states as follows (Response In Opposition To Application For Leave To Appeal And Motion For Stay at p. 6, n. 2):

"Judge Eldridge, dissenting in *Wiggins v. State,* 324 Md. 551, 597 A.2d 1359 (1991), referred to Colvin–El's case as one where 'there was little question that the defendant committed the murder as a principal in the first degree.' *Id.* at 587 [597 A.2d 1359]."

The State's quotation is somewhat out of context. The entire passage from the dissenting opinion in *Wiggins v. State,* 324 Md. 551, 587–588, 597 A.2d 1359, 1376–1377 (1991), is as follows:

"Under the present death penalty statute, this Court has never upheld a death sentence on evidence as weak as that introduced in this case. In the numerous cases where we have upheld the death sentence, there was little question that the defendant committed the murder as a principal in the first degree. Evidence which supported these findings included a confession by the defendant, *Stebbing v. State,* [299 Md. 331, 473 A.2d 903 (1984)] *supra;* eyewitness testimony to the incident, *Gilliam v. State,* 320 Md. 637, 579 A.2d 744 (1990), *cert. denied,* 498 U.S. 1110, 111 S.Ct. 1024, 112 L.Ed.2d 1106 (1991); *Huffington v. State,* 304 Md. 559, 500 A.2d 272 (1985), *cert. denied,* 478 U.S. 1023, 106 S.Ct. 3315, 92 L.Ed.2d 745 (1986); *White v. State,* 300 Md. 719, 481 A.2d 201 (1984), *cert. denied,* 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 837 (1985); and fingerprints of the defendant at the scene coupled with the defendant's possession of the victim's property, *Colvin v. State,* 299 Md. 88, 472 A.2d 953, *cert. denied,* 469 U.S. 873, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984)."

It should be noted that the above-quoted passage was written in 1991, which was prior to the 1992 re-sentencing hearing in Colvin–El's case. It was at the 1992 re-sentencing hearing that the critical evidence concerning the opening of the basement door and the fingerprints in the house was developed in detail. The weakness of the State's case against Colvin–El became apparent during the 1992 hearing. In my view, as a result of the 1992 proceeding, the evidence showing that Colvin–El was the principal in the first degree is just as weak as the evidence showing that Wiggins was the principal in the first degree.

termine, *inter alia,* "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Code (1957, 1982 Repl.Vol.), Art. 27, § 414(e)(4). Subsequently, the General Assembly repealed the above-quoted provision for statutory proportionality review. Colvin–El argues that, because the offense in this case occurred prior to the repeal of the proportionality review provision, *ex post facto* considerations require that proportionality review remain applicable to this case. Although acknowledging that this Court did engage in proportionality review when this case was first before us on direct appeal, *Colvin v. State,* 299 Md. 88, 472 A.2d 953 (1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984), Colvin–El points out that some of the critical facts concerning the case came to light after that time. He also points out that this Court, in conducting its earlier proportionality review, compared this case to five other cases and that, in those cases, none of the defendants ultimately received a death sentence. In addition, Colvin–El suggests that, even without a statutory basis, this Court has the ability to review a capital sentence which is wholly disproportionate to the sentences in other first degree murder cases.

In my view, there may well be merit in Colvin–El's argument regarding proportionality review under the former statute. Moreover, if the Legislature had never provided for proportionality review, a capital sentencing scheme which in practice results in wholly irrational applications of the death sentence cannot be squared with the equal protection component of Article 24 of the Maryland Declaration of Rights and with the "cruel and unusual punishment" prohibition in Article 25 of the Declaration of Rights.[2]

The Maryland death penalty statute, by requiring the judge or jury to find the presence of one or more specified aggrava-

---

2. The Maryland Constitution contains two "cruel and unusual punishment" prohibitions. One, directed at the General Assembly, is in Article 16 of the Declaration of Rights. The other, directed at "the Courts of Law," is contained in Article 25 of the Declaration of Rights.

ting factors and to weigh them against mitigating factors, in theory is designed to impose the death sentence only on those committing the more heinous first degree murders.   In light of 22 years experience under that statute, a strong argument could be made that, in practice, the statute has utterly failed to produce this result.   Moreover, that argument would include the contention that there is little or no rationality underlying the actual imposition of the death penalty in Maryland, and that the penalty disproportionately falls on poor African–American males accused of murdering white victims. This raises substantial issues under Articles 24, 25, and 46 of the Maryland Declaration of Rights.   Beyond that, a strong argument can be made that, in Maryland, "this unique penalty" has been "wantonly and ... freakishly imposed." *Furman v. Georgia,* 408 U.S. 238, 310, 92 S.Ct. 2726, 2763, 33 L.Ed.2d 346, 390 (1972) (Stewart, J., concurring).   At the very least, this Court should grant Colvin–El's application and consider the argument that the statute is being disproportionately applied.

Chief Judge BELL has authorized me to state that he agrees with the views expressed herein.